KINNER v. SHEPARD et al.

(Circuit Court, D. Connecticut.   October 22, 1902.)

1. PATENTS—PROFITS OF INFRINGEMENT—ALLOWANCE FOR LABOR COST OF ARTICLE.

In an accounting to determine the profits for which an infringer is liable, where his average daily production of the infringing article was only one-half the capacity of the machine by which it was made, he is entitled to credit as labor cost for only one-half the amount paid to the workmen who operated the machine for their services during the entire time.

On Exceptions to Master's Report on Re-Reference.   See 107 Fed. 952.

Wm. E. Simonds, for complainant.
E. B. Barnum, for defendants.

PLATT, District Judge.   The complainant's exceptions are not sustained.

The exceptions filed by the defendants are all addressed to one or the other of two definite contentions:   First. Objections to so much of the report as tends to enlighten the court upon the question of damages.   Second. Objections to such portions of the report as deal with the matter of the profits made by the defendants by reason of their sale of the infringing device.

The exceptions touching upon the question of damages are sustained.   No sufficient evidence has been adduced to support a claim that the complainant should recover any sum in the nature of damages.   It does not appear that complainant could or would have sold any considerable quantity of the goods sold by the defendants.

The important question to be passed upon is to determine, as closely as can be done, from the evidence reported by the master, what profit the defendants derived from their infringing sales.   That problem is somewhat simplified by the admissions made by the defendants. They practically admit the principle adopted by the master, who followed, as he says, a long-established practice in this court, in adding 25 per cent. upon the cost of labor and materials to cover shop and selling expenses.   They say that, if the master had retained the labor account as they reckoned it, his result would substantially coincide with the cost which they reached in their former estimate.   It is not unlikely that the rather rough estimate formerly suggested by them may have been above the actual facts.   If so, the master's figures in this respect would benefit the defendants to an equal extent.

The only real contention is grouped around the discussion as to whether the master has properly adjusted the labor account.   He is clearly right in saying that it would be unjust to charge to the labor on the infringing goods the entire sum which the defendants paid to the men and boys who gave up some part of their time to the infringing machine.   The master reasons in this wise:   The capacity

¶ 1. Accounting by infringer of patents for profits, see note to Brickill v. Mayor, etc., 50 C. C. A. 8.

of the machine was 550 dozen per day. The actual production was 230·dozen per day. The defendants paid all parties who worked on the machine $6,010. Of this lump sum the men and boys who produced the infringing goods from the machine are only entitled to $^{23}/_{55}$, which is $2,513.27. If his premises are correct, it is probable that his conclusion would furnish the most equitable rule which can be evolved from the mass of testimony which he had before him. That testimony is especially noticeable for its omissions, uncertainties, guesses, irregularities, and general confusedness.

The defendants are not entitled to any unusually tender consideration and care. They undoubtedly damaged the complainant more seriously than he can possibly be recompensed by this decree. He fails to recover his due, because he is unable to furnish even a fairly reasonable presumption that he lost his customers through the sales made by the defendants. It does not avail them that, when their laborers were not working the machine to the complainant's disadvantage, they were either idle or employed at other remunerative labor. Such hours ought not to be used by the defendants in casting up an account which has for its primary purpose the diminution of the sum of money which should find its way into the complainant's coffers.

But are the master's premises correct? A careful examination of the evidence leads to the conclusion that he has, to a small, and perhaps pardonable, extent, overestimated the capacity of the machine and underestimated the production. The machine might have done all that he gives it credit for doing much of the time, and, in the way it was actually used, would have been very likely to approach those figures. The actual production, however, seems to have been a little more than he states it to have been. There were years when quite a few more dozen per day were produced. It appears, under all the circumstances, eminently fair to make the division of time equal,—just half and half. And so, with very slight changes in the other figures, which seem warranted, the problem is thus stated and solved:

| | | |
|---|---:|---:|
| Defendants' receipts from infringing sales as found by Judge Townsend ................................... | | $16,727 88 |
| Defendants' costs: | | |
|     Wire ............................................ | $6,618 21 | |
|     Clasps ......................................... | 675 58 | |
|     Labor on wires (one-half of $6,010)................ | 3,005 00 | |
|     25 per cent. on cost of labor and materials......... | 2,574 70 | |
|        Total cost............................... | | 12,873 49 |
| The balance is profit................................. | | $3,854 39 |

And this amount the defendants ought to pay.

Counsel for complainant suggests that a motion for increased damages will be made after the filing of this opinion. This is his undoubted right. I think, however, that it is fair to him and his client that my views upon that matter should be clearly appreciated at this juncture. I have taken the necessary time, and have given the entire record in this cause much study and thought. The arguments which can be advanced in support of the motion are apparent, but I am very strongly predisposed to take the same view of the matter which

118 F.—4

Judge Townsend did. I trust that counsel will concede that this is my own independent view of the situation, and in no sense an imitation or following of one for whose judgment I have the highest respect. I am sure that I have given the matter very much more thought than he had the time to give, and I find that in this case, as in many others, "all roads lead to Rome."

Let a decree be entered for $3,854.39, with interest thereon from May 1, 1897, and costs.